# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MULTIMEDIA PATENT TRUST,<br><br>　　　　　　　　　Plaintiff,<br>vs.<br><br>DIRECTV, Inc., et al.,<br><br>　　　　　　　　　Defendant. | CASE NO. 09-CV-278-H (CAB)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST WESTINGHOUSE DIGITAL ELECTRONICS, LLC** |

On February 13, Plaintiff Multimedia Patent Trust ("MPT") filed a complaint alleging patent infringement. (Doc. No. 1, "Compl.") On October 21, 2010, Plaintiff Multimedia Patent Trust ("MPT") filed its first motion for default judgment against Defendant Westinghouse Digital Electronics, LLC ("Westinghouse"). (Doc. No. 255.) On November 8, 2010, the Court held a motion hearing, entered Clerk's default against Defendant Westinghouse, and ordered Plaintiff MPT to refile its motion for default judgment. (Doc. No. 262.) On November 15, 2010, Plaintiff MPT refiled its motion for default judgment against Westinghouse. (Doc. No. 274.) On February 24, 2011, Plaintiff filed a declaration regarding MPT's efforts to serve the motion for default judgment on Defendant Westinghouse. (Doc. No. 330.) The Court submitted the matter on March 1, 2011. (Doc. No. 332.) To date, Defendant Westinghouse has not filed an opposition to the motion for default judgment. After due consideration, the Court GRANTS Plaintiff's motion for default judgment against Defendant Westinghouse Digital Electronics.

## BACKGROUND

Plaintiff first contacted Westinghouse Digital Electronics in May 2008 regarding its alleged infringement of MPT's patents. Plaintiff's Trustee wrote to Westinghouse, explaining that Westinghouse's products infringed one or more claims of U.S. Patent Nos. 4,958,226 ("the '226 patent"), 5,227,878 ("the '878 patent"), and 5,563,593 ("the '593 patent"). (Doc. Nos. 274-1 at 1, 274-4, Declaration of Justin Wilcox ("Wilcox Decl."), Ex. A.) Plaintiff specifically identified certain of Westinghouse's MPEG-4 compliant digital picture frames and LCD televisions as infringing claims of those patents. (Wilcox Decl. Ex. A at 3.) The parties subsequently engaged in licensing discussion. (Doc. No. 274-1 at 1.) During those discussions, Plaintiff provided various materials to Westinghouse, including claim charts that demonstrated how Westinghouse's MPEG-4 Part 2 products infringed MPT's patents. (Wilcox Decl. Exs. B at 20-74, C.) The parties were unable to reach resolution on a license agreement. (Doc. No. 274-1 at 1.)

On June 29, 2010, Jay R. Campbell, Todd R. Tucker, and Kyle B. Fleming of Renner, Otto, Boisselle & Sklar LLP moved to withdraw as counsel for Westinghouse. (Doc. No. 234.) In their declaration in support of the motion, Westinghouse's counsel submitted that Westinghouse no longer exists as a corporate entity. (Doc. No. 234-1, Declaration of Jay R. Campbell, "Campbell Decl.") On April 2, 2010, Westinghouse executed a General Assignment for the benefit of its creditors in favor of Credit Management Association ("CMA"). (Id. Ex. A.) Subsequent to the General Assignment, CMA sold certain assets of Westinghouse to Golden Star Electronics, LLC ("Golden Star"). (Id.) Golden Star also acquired the licensing rights to use the Westinghouse name and changed its name from Golden Star Electronics, LLC to Westinghouse Digital, LLC. (Campbell Decl. ¶ 3.) The entity originally known as Westinghouse Digital Electronics is now known as Mora Electronics, LLC ("Mora"). (Id.)

On September 3, 2010, the Court granted the motion to withdraw. (Doc. No. 246.) The Court gave Westinghouse 45 days from August 30, 2010 to have substitute counsel appear in the action and set a hearing for October 12, 2010. (Id.) Westinghouse failed to file for

substitution of counsel or appear at the October 12 hearing. (Doc. No. 250.) Plaintiff MPT subsequently filed for default. (Doc. No. 255.)

## DISCUSSION

### I. Legal Standard for Entry of Default Judgment

Federal Rule of Civil Procedure 55(b) provides that default judgment may be entered upon the application of a party.

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quotation marks and citations omitted). Federal Rule of Civil Procedure 54(c) provides that, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Accordingly, where default judgment is granted, the scope of relief is limited to that requested in the complaint.

### A. Sufficiency of Complaint, Merits of Claim, and Possibility of Dispute Concerning Material Facts

These factors favor entry of default judgment of against Defendant Westinghouse. First, Plaintiff's complaint is sufficient to state a claim for patent infringement against Defendant Westinghouse. With respect to the '226, '878, and '593 patents, Plaintiff alleges (1) it "is the sole holder of the entire right, title and interest in" those patents; (2) Westinghouse has infringed those patents by "making, using, offering to sell, selling and/or importing within the United States infringing products;" and (3) Plaintiff "notified Westinghouse of its infringement of the Patents-in-Suit and its need to enter into a license agreement with

[Plaintiff]." (Compl. ¶¶ 98-101.) Moreover, Plaintiff has submitted evidence of Westinghouse's infringement of the '226 and '878 patent. In its July 14, 2009 Disclosure of Asserted Claims and Preliminary Infringement Contentions against Westinghouse ("Preliminary Infringement Contentions"), Plaintiff identified Westinghouse's accused infringing products—including televisions and digital picture frames—and set forth its contentions regarding how those televisions and frames infringed claim 12 of the '226 patent and claims 13, 14, 15, and 17 of the '878 patent. (Wilcox Decl. Ex. L.) Plaintiff provided detailed claim charts to demonstrated how Westinghouse's accused televisions meet every element of each asserted claim. (Id. at 181-206.) Finally, the Court does not question the appropriateness of entry of default judgment based on the possible existence of a dispute over material facts. Upon entry of default, "all well-pleaded facts in the complaint are taken as true, except those relating to damages." TeleVideo, 826 F.2d at 917-18.

Additionally, Westinghouse has failed to sufficiently substantiate its denial of infringement and assertion of the defense of noninfringement. Plaintiff propounded interrogatories seeking Westinghouse's factual basis for pleading noninfringement, its non-infringement contentions, and its supporting facts and contentions for its other affirmative defenses. (See, e.g., Wilcox Decl. Ex. E at 116, 118 (Interrogatory Nos. 7, 10, & 11).) Westinghouse responded to each of these interrogatories by invoking Federal Rule of Civil Procedure 33(d) and stating that the answers to the interrogatory can be derived from documents, but failed to point to any particular documents or bates numbers. (Id. Ex. F at 125, 127-28.) MPT informed Westinghouse that its responses to the interrogatories were deficient but asserts that Westinghouse continued to submit deficient, non-substantive responses, even after the parties met and conferred regarding supplementing the answers to these interrogatories. (Doc. No. 274-1 at 2.) Even in its final response, Westinghouse asserted that its denial of infringement is based on its "lack of knowledge as to the specific components and functions of its accused products, as well as MPT's insufficient production of evidence to meet its burden of proving infringement." (Wilcox Decl. Ex. I at 5.)

///

**B.     Excusable Neglect**

The Court concludes that Westinghouse's default was not the result of excusable neglect.  Rather, the default was entered because Westinghouse refused to comply with Court orders or otherwise participate in the litigation.  Westinghouse participated initially in this action, filing an answer to Plaintiff's complaint and submitting responses to interrogatories. (Doc. No. 50; see Wilcox Decl. Ex. F.)  However, after Westinghouse executed the General Assignment in favor of CMA and its counsel withdrew, Westinghouse has refused to comply with Court orders requiring substitution of counsel and failed to engage in further discovery. (See Doc. Nos. 234, 246, 250.)  Westinghouse's former counsel was informed by Michael Joncich at CMA that CMA would not defend Westinghouse in this case.  (Campbell Decl. ¶ 5.)  Additionally, the Court and Plaintiff have gone to great lengths to ensure the Defendant Westinghouse received notice of all Court orders relevant to this proceeding.  Plaintiff has served or attempted to serve copies of its motion for default judgment and supporting papers on the following entities:

(1)   Westinghouse's former counsel, Kyle Fleming, at Renner, Otto, Boisselle & Sklar, LLP on October 21, 2010;

(2)   CMA and Michael Joncich of CMA on October 27, 2010 and February 8, 2011;

(3)   CMA's counsel, Samuel Newman, at Gibson Dunn & Crutcher LLP on October 28, 2010 and February 8, 2011;

(4)   Mora's registered agent, Paracorp, on October 27, 2010 and February 8, 2011;[1]

(5)   Mora at its business address on October 27, 2010 and February 9, 10, 11, 14, and 15, 2011;

(6)   Mora's CEO, Richard Houng, at his residence on February 17, 18, 29, and 21, 2011.

(Doc. No. 330 at 1-4.)  MPT reported that Mora appears to be a closed business and its attempts to contact Mora have been unsuccessful.  (Id. at 3.)

---

[1] MPT learned after attempting service the second time that Paracorp resigned as Mora's registered agent.

### C.     Prejudice to Plaintiff, Policy Favoring Decisions on the Merits, and Sum of Money at Stake

Westinghouse's failure to defend itself in this litigation has prejudiced Plaintiff. In this complex, multi-party case, Westinghouse's failure to substitute counsel and its failure to engage in discovery has prejudiced Plaintiff's ability to proceed on the merits of the litigation. Without entry of default judgment, Westinghouse's failure to defend will leave Plaintiff without any recourse for recovery. Accordingly, while the Federal Rules of Civil Procedure favor decisions on the merits, the Court concludes that entry of default judgment is necessary to ensure Plaintiff does not face undue prejudice and is not without recourse for its claims. Additionally, the Court concludes that the sum of money at issue in this case does not warrant denial of Plaintiff's motion for default judgment.

Based on the Court's analysis of the factors announced in Eitel v. McCool, 782 F.2d at 1471-72, the Court concludes that entry of default judgment against Westinghouse is warranted in this case.

## II.     Damages

Plaintiff seeks damages for past infringement in the amount of $2,238,686 for infringement of the '878 and '226 patents. (Doc. No. 274-1 at 8.) Title 35 U.S.C. § 284 establishes that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." The patentee bears the burden of proving damages. Lucent Tech., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324 (Fed Cir. 2009). Upon entry of default, the factual allegations of the complaint are not taken as true with respect to the amount of damages. See TeleVideo, 826 F.2d at 917-18. "Two alternative categories of infringement compensation are the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining." Lucent, 580 F.3d at 1324. Lost profits are not at issue in this case. Thus, Plaintiff's claim for damages focuses on the reasonable royalty rate.

///

**A.     Reasonable Royalty Rate**

Plaintiff requests a reasonable royalty rate of 0.5% of the selling price of products infringing the '226 and '878 patents with a $1.50 per product minimum.[2] (Doc. No. 274-1 at 8.) In support of its requested royalty rate, Plaintiff submitted declarations of its damages expert Roger S. Smith and its technical expert Iain Richardson. (Doc. Nos 274-2 ("Richardson Decl."), 274-3 ("Smith Decl.").)

The reasonable royalty rate is generally calculated using a hypothetical negotiation approach which attempts to determine the royalty rate the parties would have agreed upon had they successfully negotiated an agreement before infringement began. Lucent, 580 F.3d at 1324. "The hypothetical negotiation tries, as best as possible, to recreate the ex ante licensing negotiation scenario and to describe the resulting agreement." Id. at 1325. To assess the reasonable royalty rate, courts may rely on the analytical approach set forth in Georgia-Pacific Corp. v. United States Plywood Co. 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) modified, 446 F.2d 295 (2d Cir. 1971), cert. denied, 404 U.S. 870 (1971); see Lucent, 580 F.3d at 1325-35; Interactive Pictures Corp. v. Infinite Pictures, Inc., 274 F.3d 1371, 1385-86 (Fed. Cir. 2001). "The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." 35 U.S.C. § 284.

Plaintiff's expert Roger S. Smith assessed Plaintiff's proposed royalty rate in light of various factors, including those articulated in Georgia-Pacific, and concluded that Plaintiff's proposed rate is fair and reasonable. (Smith Decl. ¶¶ 28-29.) Mr. Smith considered all of the Georgia-Pacific factors and emphasized several that are of particular importance in forming an opinion with respect to the reasonable royalty in this case. (Id. ¶ 24.) For example, Georgia-Pacific Factor 1 considers the royalties received by the patentee for the licensing of the patent in suit as proving or tending to prove an established royalty. See Georgia-Pacific, 318 F. Supp. at 1120. Mr. Smith suggests this factor supports Plaintiff's requested royalty rate because both Plaintiff and the previous owner of the patents, Lucent, have licensed the

---

[2] Plaintiff "agrees that it will not use the award of damages from Westinghouse as evidence of the appropriate royalty rate against the other Defendants." (Doc. No. 274-1 at 1.)

1  patents-in-suit to third parties at the same or similar royalty rate. (Smith Decl. ¶¶ 16-22, 24.)
2  Mr. Smith supports his conclusion with details from several licensing agreements between
3  Plaintiff (or Lucent) and third parties. (See id. Exs. C-H.) Westinghouse has not advanced any
4  arguments in opposition to Plaintiff's characterization of these licensing agreements or its
5  analysis under Georgia-Pacific.

6  Plaintiff has also presented evidence that application of the entire market value rule is
7  appropriate because, among other reasons, the patented inventions are the substantial basis of
8  consumer demand for the infringing products. (See Doc. No. 274-1 at 9-12.) "The entire
9  market value rule allows a patentee to assess damages based on the entire market value of the
10 accused product only where the patented feature creates the 'basis for customer demand' or
11 'substantially create[s] the value of the component parts.'" Uniloc USA, Inc. v. Microsoft
12 Corp., No. 2010-1035, slip op. at 48 (Fed. Cir. Jan. 4, 2011) (citing Lucent, 580 F.3d at 1336,
13 Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1549-50 (Fed. Cir. 1995)).  Iain Richardson
14 considered the patents and infringing products and concluded that the '226 and '878 patents
15 are core technologies of consumer electronic products such as digital picture frames and DVD
16 players. (Richardson Decl. ¶ 9.) The patented technology enables digital picture frames and
17 DVD players to play back compressed video material stored on a flash memory card or optical
18 disk. (Id. ¶¶ 10-12.) Richardson further states that inventions without such capability would
19 be at a competitive disadvantage. (Id. ¶¶ 14-17.) Thus, Plaintiff MPT contends that the '226
20 and '878 technology is not a small feature and instead forms the basis of consumer demand for
21 the infringing products. (Doc. No. 274-1 at 10-11); see Lucent, 580 F.3d at 1332-33.
22 Westinghouse does not dispute Plaintiff's application of the entire market value rule.

23 Based on the totality of evidence and argument submitted by the parties, the Court
24 concludes that 0.5% of the selling price of products infringing the '226 and '878 patents with
25 a $1.50 per product minimum is a reasonable royalty rate for calculating damages as to
26 Westinghouse. The Court notes that this determination applies only to Westinghouse and may
27 not be used as evidence of the reasonableness of a royalty rate as to any other Defendant in this
28 action.

### B.     Royalty Base and Damages for Past Infringement

Based upon a reasonable royalty rate of 0.5% of the selling price of products infringing the patents with a $1.50 per product minimum, Plaintiff requests $2,238,686 in damages for past infringement. (Doc. No. 274 at 18.) Plaintiff arrived at this figure by multiplying the reasonable royalty rate by the royalty base, which is Westinghouse's revenues from sales of infringing TV/DVD combos and infringing digital picture frames. (Id. at 13.) Plaintiff determined the royalty base using the time period beginning on the date that Plaintiff first gave notice to Westinghouse of its infringement of the patents-in-suit, May 9, 2008, through April 2, 2010, when Westinghouse executed the General Assignment to CMA. (Id. at 13, Wilcox Decl. Ex. A.)

#### i.     TV/DVD Combos

Plaintiff identified seven TV/DVD combos that MPT determined complied with the MPEG-4 standard. (See Wilcox Decl. Ex. M at 239 (Model No. LTV-32w4 HDC), Ex. M at 240 (Model No. LTV-40w1 HDC), Ex. N at 305 (Model No. SK-26H570D), Ex. O at 372 (Model No. SK-26H590D), Ex. N (Model No. SK-32H570D), Ex. O at 373 (Model No. SK-32H590D), Ex. P (Model No. SK-40H590D).) For these models, Plaintiff calculated revenues based upon Westinghouse's production of monthly revenue reports from May 2008-August 2009. (Id. Ex. Q at 452-466.) From these reports, Plaintiff determined that Westinghouse's revenue from May 2008-August 2009 is $157,765,164. (Id.) Based upon this royalty base and applying a royalty rate of 0.5%, Plaintiff determined that it is entitled to $788,825.82 in damages for Westinghouse's infringing sales of the seven TV/DVD combos.[3] (Doc. No. 274-1 at 14.) Plaintiff further believes that Westinghouse model number VK-40F580D is likely MPEG-4 compliant and infringes on the '226 and '878 patent. (Doc. No. 274-1 at14.) Because Plaintiff admits that it has been unable to confirm infringement, the Court declines to include damages based on this product. (See id.) Accordingly, the Court concludes that the amount of damages from infringing sales of TV/DVD combos is $788,826.82.

---

[3] MPT did not have access to Westinghouse's revenue reports after August 2009. (Doc. No. 274-1 at 14. Accordingly, MPT does not request damages for the period from August 2009 through April 2, 2010.

### ii. Digital Picture Frames

Plaintiff identified seven digital picture frames complied with the MPEG-4 standard. (See Wilcox Decl. Exs. U at 578, V at 590, W at 662 (Model No. DPF-0702), Ex. X at 714 (Model No. DPF-703), Exs. Y at 750, W at 663 (Model No. DPF-0802), Ex. X at 715 (Model No. DPF-0803), Exs. X at 797, W at 664 (Model No. DPF-1021), Ex. X at 717 (Model No. DPF-1023), Exs. BB at 1015, W at 665 (Model No. DPF-1411).)  For these models, Plaintiff calculated revenues based upon Westinghouse's production of its 2008 revenue report. (Id. Ex. S at 471-82.) Assuming that the level of sales for digital picture frames remained at the levels from the 2008 report through the first quarter of 2010, MPT calculated the revenue to be $219,576,917.[4] (Doc. No. 274-1 at 16, Wilcox Decl. Ex. CC.) At a 0.5% royalty rate, damages based on sales of these infringing frames is $1,097,884.59. (Doc. No. 274-1 at 16.)

Westinghouse has not advanced any arguments in opposition to Plaintiff's calculation of damages for past infringement. After considering the evidence presented in Plaintiff's moving papers and supporting declarations, the Court determines that damages of $1,886,710.41 are appropriate. Accordingly, the Court grants Plaintiff's request for damages of $1,886,710.41 for past infringement.

## CONCLUSION

After due consideration, the Court grants Plaintiff's motion and enters default judgment against Westinghouse. The Court orders Westinghouse to pay Plaintiff $1,886,710.41 in damages for past infringement. The Court notes that Plaintiff may not use this award of damages evidence of the appropriate royalty rate as to other Defendants in this action.

**IT IS SO ORDERED**.

DATED: March 4, 2011

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[4] MPT considers a second scenario that assumes a growth rate of 10% per quarter for the other quarters outside of the 2008 revenue report. (Doc. No. 247-1 at 16.) The Court declines to conclude that MPT sufficiently proved damages to support this growth rate and declines to apply the assumption.