**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MULTIMEDIA PATENT TRUST,<br><br>                          Plaintiff,<br><br>   vs.<br><br>DIRECTV, INC., et al.,<br><br>                          Defendants. | CASE NO. 09-CV-00278-H (CAB)<br><br>**ORDER DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT** |

On July 18, 2011, Plaintiff Multimedia Patent Trust ("MPT") filed a motion for partial summary judgment. (Doc. No. 383.) On August 1, 2011, Defendants DirecTV, Inc., DirecTV Enterprises, LLC, the DirecTV Group, Inc., DirecTV Holdings LLC, and DirecTV Operations LLC (collectively "DirecTV") filed its response in opposition to MPT's motion. (Doc. No. 423.) On August 8, 2011, MPT filed its reply. (Doc. No. 432.) On August 10, 2011, Defendant Vizio, Inc. ("Vizio") filed a notice of joinder to DirecTV's opposition. (Doc. No. 438.) The Court held a hearing on the matter on August 15, 2011. Nathan K. Cummings and Jonathon G. Graves appeared for Plaintiff MPT. John W. Thornburg, Juanita R. Brooks, Thomas N. Milliken, Joanna M. Fuller, and Joseph P. Reid appeared for Defendant DirecTV. Kevin McBride appeared for Defendant Vizio. For the reasons below, the Court DENIES IN PART MPT's motion for partial summary judgment to the extent it relies on MPT's contention

that the 2009 license is a novation of the 2002 license.

## **Background**

On February 13, 2009, MPT brought the present action against various Defendants, including DirecTV, alleging infringement of multiple patents related to video compression technology, including U.S. Patent Nos. 4,958,226 ("the '226 patent"), 5,136,377 ("the '377 patent"), 5,227,878 ("the '878 patent"), 5,500,678 ("the '678 patent"), and 5,563,593 ("the '593 patent"). (Doc. No. 1, Compl.)  On April 13, 2009, DirectTV filed an answer to MPT's complaint and asserted the affirmative defenses of patent exhaustion and license. (Doc. No. 53 ¶¶ 145, 152.)

## **Discussion**

**I. Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The

nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256. "The 'opponent must do more than simply show that there is some metaphysical doubt as to the material fact.'" Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 265–66 (9th Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Furthermore, the nonmoving party generally "cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy, 952 F.2d at 266; see Foster v. Arcata Assocs., 772 F.2d 1453, 1462 (9th Cir. 1985), cert. denied, 475 U.S. 1048 (1986); Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543–44 (9th Cir. 1975).

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court does not make credibility determinations with respect to evidence offered. See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

**II. Analysis**

In the present motion, MPT seeks partial summary adjudication of DirecTV's affirmative defenses of license and exhaustion. (Doc. No. 383.) In support of these defenses, DirecTV contends that its manufacturers are licensed to manufacture and sell products that practice patents contained in the 2002 MPEG LA form portfolio license (the "2002 license") and the 2009 MPEG LA form portfolio license (the "2009 license").[1] (Doc. No. 423, at 3-4.) Specifically, DirecTV contends that its standard definition STBs, high definition STBs, MPEG-2 broadcast decoders, hybrid MPEG-2/H.264 broadcast decoders, MPEG-2 broadcast encoders, hybrid MPEG-2/H.264 broadcast encoders, and H.264 broadcast encoders are

---

[1] DirecTV also contends that it has license and exhaustion defenses based on licenses its suppliers possessed from MPT's predecessors-in-interest, AT&T and Lucent. (Doc. No. 423, at 12-13 n.6.) However, those licenses are not addressed in MPT's motion for partial summary judgment, and are, therefore, not at issue in this motion.

1  covered by the 2002 license and its MPEG-2 broadcast decoders and MPEG-2 broadcast
2  encoders are covered by the 2009 license. (Id. at 3-6.) The parties agree that the two licenses
3  contain the '226 patent, the '878 patent, and the '678 patent as part of their patent pools. (Doc.
4  No. 383, at 1; Doc. No. 423, at 1.) DirecTV further contends that because its purchases from
5  its manufacturers were authorized under the terms of those two licenses, MPT's rights under
6  the '226 patent, the '878 patent, and the '678 patent are exhausted by those authorized sales.
7  (Doc. No. 423, at 14-15.)

**A. DirecTV's Exhaustion and License Defense under the 2002 License**

MPT argues that it is entitled to summary judgment on DirecTV's license and exhaustion defenses based on the 2002 license. MPT argues that the 2002 license no longer applies to DirecTV or its manufacturers because the 2009 License is the current operative license and is a novation of the 2002 license, which completely replaced the 2002 license. (Doc. No. 383, at 8-10.) DirecTV argues that MPT cannot meet the heavy burden of proving that the 2009 license was a novation of the 2002 license. (Doc. No. 423, at 7-10.)

Under New York law,[2] "[a] novation is the substitution of a new obligation for an old one, with the intent to extinguish the old one." Wong v. Michael Kennedy, P.C., 853 F. Supp. 73, 81 (E.D.N.Y. 1994). The effect of a novation is to "nullif[y] the original obligation." Lazere Fin. Corp. v. Crystal Mart, Inc., 357 N.Y.S.2d 973, 975 (1974). The four elements of a novation are "'a previous valid obligation, agreement of all parties to the new obligation, extinguishment of the old contract, and a valid new contract.'" Ruso v. Morrison, 695 F. Supp. 2d 33, 53 (S.D.N.Y. 2010).

"'New York courts have set a stringent standard for novation.'" Id. "Because a novation has the effect of extinguishing the prior contract between the parties, the existence of a novation 'must never be presumed,' and the party asserting the novation's existence has

---

[2] The parties agree that the "validity, construction and performance" of the 2002 license and the 2009 license are both governed by New York law. (Doc. No. 423-2, Declaration of Thomas N. Millikan ("Millikan Decl.") Ex. 4 § 7.18, Ex. 6 § 7.18; Doc. No. 383, at 9; Doc. No. 423, at 5-6.)

the burden of proving that the subsequent agreement was intended as a complete substitute for the parties' prior agreements." In re Cohen, 422 B.R. 350, 373 (E.D.N.Y. 2010) (citation omitted).

In attempting to meet its burden of proving that the 2009 license was intended to be a novation of the 2002 license, MPT relies on a boilerplate merger clause contained in the 2009 license. (Doc. No. 383, at 9; Doc. No. 423-2, Milliken Decl. Ex. 6 § 7.20.1.) The merger clause provides:

> The provisions of this Agreement, including its attachments and any amendments, constitute the entire agreement between the parties, and supercedes any and all prior communications and understandings, oral or written, between the parties relating to the subject matter hereof.

(Doc. No. 423-2, Milliken Decl. Ex. 6 § 7.20.1.) However, "an intent to extinguish earlier contractual obligations cannot be inferred from a standard merger clause simply because the parties to the later agreement also entered an earlier contract on a related topic." Abuelhija v. Chappelle, 2009 U.S. Dist. LEXIS 55861, at *17-18 (S.D.N.Y. 2009). A boilerplate merger clause "does not evidence a 'clear expression' of intent to extinguish a separate and distinct written contract." Id. at 18. In addition, DirecTV correctly notes that the merger clause does not even explicitly mention previous "contracts" or "agreements" and only states that it supercedes "prior communications and understandings." (Doc. No. 423, at 10; Doc. No. 423-2, Milliken Decl. Ex. 6 § 7.20.1.)

MPT also relies on the 2009 license having an effective date of June 1, 1994 as evidence that it was a novation of the 2002 license. However, MPEG LA's 30(b)(6) representative testified that June 1, 1994 was made the effective date so that a new licensee could get coverage for their historic products in exchange for "catch-up" payments. (Doc. No. 423-2, Milliken Decl. Ex. 2, at 122:15-123:3.) Allowing new licensees to backdate their coverage in exchange for catch-up payments is not evidence that the parties intended the 2009 license to be a novation of the 2002 license. In fact, contrary to MPT's position, MPEG LA's 30(b)(6) representative testified that the 2009 license was never discussed as being a novation of the 2002 license. (Id. at 122:1-10.)

1          In addition, the 2009 license never uses the word "novation" or mentions amending the 2002 license. (Doc. No. 423-2, Milliken Decl. Ex. 6.) This failure to mention amending the 2002 license is significant because under the terms of the 2002 license, an amendment to that agreement is only effective if "such amendment is in writing and specifically references this agreement, and is signed by all parties hereto." (Id. Ex. 4 § 7.20.2.) MPT attempts to argue that a novation is different from an amendment to a contract. (Doc. No. 432, at 6.) However, the Court disagrees. A novation would be a type of amendment to the 2002 license, see Rokowsky v. Gladstone, 425 N.Y.S.2d 18, 19 (N.Y. App. Div. 1980), but the 2009 license never mentions that it is amending the 2002 license.

          In its reply, MPT notes that there was an 18 month period where the 2009 license was available, and the 2002 license had not yet expired. (Doc. No. 432, at 2.) MPT then argues that if there had not been a novation, then a party that has executed the 2009 license before the 2002 license expired would have to pay royalties under both licenses until the 2002 license expired. (Id. at 2-5.) MPT has presented evidence that this did not in fact happen, and parties that executed the 2009 license only paid royalties under that license moving forward. (Doc. No. 432-2, Declaration of Nathan K. Cummings Exs. C-G.) The Court concludes that this evidence does not further MPT's novation argument. At most, this evidence suggests that the parties believed that when they executed the 2009 license, their rights under the 2002 license were being terminated prospectively, and they would only be covered by the 2009 license moving forward. It does not show that the parties intended to *nun pro tunc* retroactively extinguish their previous rights under the 2002 license as MPT suggests.

          In light of the evidence before it, the Court concludes that MPT has failed to meet the standard for proving that the 2009 license was a novation of the 2002 license as a matter of law. Accordingly, the Court DENIES MPT's motion for summary adjudication of DirecTV's license and exhaustion defenses based on the contention that the 2009 license was a novation of the 2002 license.

///

///

### Conclusion

For the foregoing reasons, the Court DENIES IN PART MPT's motion for partial summary judgment to the extent it relies on MPT's contention that the 2009 license is a novation of the 2002 license. The Court will hold a further hearing on the parties' cross motions for summary judgment on DirecTV's license and exhaustion defenses on September 23, 2011 at 1:30 p.m.[3]

**IT IS SO ORDERED.**

DATED: August 16, 2011

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

---

[3] The Court invites the parties to provide further briefing and argument on the "field of use" and "sale/chain of distribution" issues that were presented at the previous hearing.