# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MULTIMEDIA PATENT TRUST,<br><br>                Plaintiff,<br>vs.<br><br>DIRECTTV, INC., ET AL.,<br><br>                Defendants. | CASE NO. 09-CV-278 H (CAB)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PATENT NON-INFRINGEMENT OF U.S. PATENT NO. 5,227,878.** |

On October 7, 2011, Vizio, Inc. ("Vizio") filed its motion for summary judgment of patent non-infringement. (Doc. No. 551.) On October 24, 2011, Defendant Media Patent Trust ("MPT") filed its response in opposition. (Doc. No. 597.) On October 31, 2011, Vizio filed a reply in support of the motion. (Doc. No. 607.) On November 4, 2011, the Court held a hearing on this matter. Nathan Cummings and Justin Wilcox appeared for MPT. Kevin McBride and David Cochran appeared for Vizio.

For the following reasons, the Court denies Defendants' motion for summary judgment on non-infringement of U.S. Patent No. 5,227,878.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

**Background**

On February 13, 2010, MPT filed a complaint alleging that Vizio's accused products infringe U.S. Patent No. 5,227,878 ("the '878 patent"). (Doc. No. 1 at 14-15.) In response, Vizio filed its answer with a number of affirmative defenses, including patent non-infringement. (Doc. No. 46 at 12.) The Court issued a claim construction order on August 18, 2011. (Doc. No. 454.) The matter is set for trial on January 10, 2012.

The '878 patent was filed on November 15, 1991, and issued on July 13, 1993. (The '878 patent.) The patent relates generally to the adaptive coding and decoding of digital video signals, which helps to transmit high resolution images without loss of quality. (Id.) Claim 13 is the only claim asserted against Defendant. The United States Patent and Trademark Office ("USPTO") issued a certificate of correction regarding claim 13 on October 25, 2005, resulting in the following claim language:

> An apparatus for decoding a compressed digital video signal, comprising:
> a means for receiving a compressed digital video bit stream; and
> a means responsive to a motion compensation type signal for selectively and adaptively performing motion compensated decoding of frames of the compressed digital video bit stream and fields of the compressed video bit stream.

(Id.)

The accused products are devices that are capable of decoding compressed video signals, including televisions and Blu-ray players. (Doc. No. 597, Ex. A to the Richardson Declaration at 13-22.) The devices use video decoder processors that include integrated circuits and are programmed to decode the video signals. (Id. at 23-31.)

**I. Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Freeman v. Arpaio, 125 F.3d 732 (9th Cir.1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can present evidence that negates an essential element of the nonmoving party's case or demonstrate that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256.

In a motion for summary judgment of non-infringement, "[t]he movant bears the burden of demonstrating absence of all genuine issues of material fact, the district court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor, and must resolve all doubt over factual issues in favor of the party opposing summary judgment." SRI Int'l. v. Matsushita Elec. Corp., 775 F.2d 1107, 1116 (Fed. Cir. 1985).

## II. Discussion

### A. Literal Infringement

Literal infringement of a means-plus-function claim "requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1267 (Fed. Cir. 1999). "[T]he claim limitation is the overall structure corresponding to the claimed function." Id. at 1268.

An accused structure is equivalent if it "performs the claimed function in substantially the same way to achieve substantially the same result." Id. at 1267. "The proper test is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial." Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1309 (Fed. Cir. 1998).

////

1    Claim 13 is the only asserted claim of the '878 patent. The element of the claim at issue is, "a means responsive to a motion compensation type signal for selectively and adaptively performing motion compensated decoding of frames of the compressed digital video bit stream and fields of the compressed video bit stream." (The '878 patent.) The Court construed the claim element's function to include, "selectively and adaptively performing motion compensated decoding of frames of the compressed digital video bit stream and fields of the compressed video bit stream." (Doc. No. 454 at 12-13.) The structure corresponding to the claimed function, as described in the specification, includes circuits 100, 94, and 80, and their corresponding internal circuitry. (Id. at 13-14.)

Defendant provides two primary arguments with respect to direct infringement: 1) Plaintiff has not identified any structural equivalents; and 2) Plaintiff has not shown that the accused structures were available as structural equivalents at the time the '878 patent issued. (Doc. No. 551 at 1-2.)

**1. Structural Equivalents**

An accused structure is equivalent if it "performs the claimed function in substantially the same way to achieve substantially the same result." Odetics, Inc., 185 F.3d at 1267. The test for structural equivalency is to determine whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial. Chiuminatta Concrete Concepts, Inc., 145 F.3d at 1309. This Court's claim construction order specified that the structure in the '878 specification corresponding to the claimed function includes circuits 100, 94, and 80, and the corresponding internal circuitry. (Doc. No. 454 at 13-14.) All in all, the required structures include approximately 86 different components.

Defendant argues that "out of 86 required structures . . . MPT fails to identify even one allegedly corresponding equivalent structure in the accused products." (Doc. No. 551 at 9.) It is "impermissible" to conduct a "component-by-component analysis" when comparing an accused structure to a means-plus-function element and its corresponding structure. Caterpillar Inc. v. Deere & Co., 224 F.3d 1374, 1380 (Fed. Cir. 2000). Defendant's argument improperly relies on a component-by-component analysis. Specifically, Defendant improperly argues that

1. Plaintiff has failed to identify structures in the accused device that correspond to 56 out of 86
2. structures identified by the Court as being the structure corresponding to the claimed function.
3. (Doc. No. 551 at 8-9.) In Caterpillar, the District Court similarly construed the claims to
4. require various components. The Federal Circuit concluded that the individual components
5. must be treated together as "the overall structure corresponding to the claimed function."
6. Caterpillar, 224 F.3d at 1380. The fact-finder must compare the overall structure of the
7. accused product that is asserted to be a structural equivalent to the claimed structure as a whole
8. to determine if they are insubstantially different. See id. at 1267-68; Odetics, Inc., 185 F.3d
9. at 1268.
10. After review of the evidence, the Court concludes that Plaintiff has shown that a triable
11. issue remains as to whether there is structural equivalency between the accused structures and
12. the relevant structures in the '878 specification viewed as a whole. The test for structural
13. equivalency is to determine whether the differences between the structure in the accused device
14. and any disclosed in the specification are insubstantial. Chiuminatta Concrete Concepts, Inc.,
15. 145 F.3d at 1309. MPT has provided infringement contentions and an expert report authored
16. by Dr. Richardson, both allegedly identifying structures in the accused devices that are
17. insubstantially different than the structures described in the '878 patent. (Doc. Nos. 551, Ex.
18. 1, and 597, Exs. A and C to the Richardson Declaration.) The parties dispute whether MPT's
19. identification of Verilog code is a proper identification of structure.
20. MPT's infringement contentions point out the processors in each of Vizio's products
21. that allegedly perform the claimed function. (Doc. 551, Ex. 1 at C-1, D-1, G-1, H-1, and J-1.)
22. MPT then describes the circuit structures within each processor that are allegedly equivalent
23. to the claimed structures by describing specific Verilog code modules. (Doc. No. 551, Ex. 1
24. at C-3.) Dr. Richardson's report does likewise, and describes how the Verilog code modules
25. correspond to the overall claimed structures. (Doc. No. 597, Ex. C to the Richardson
26. Declaration at C-2 to C-3.) Vizio argues that the Verilog code is simply a textual format, and
27. does not constitute a structure. (Doc. No. 551 at 9-10.)
28. / / / /

According to Dr. Richardson, "[t]he textual description of a chip in HDL [Hardware Description Language] represents the actual structures on the chip." (Doc. No. 597, Ex. A to the Richardson Declaration at 34.) Verilog is an HDL. (Id. at 35.) Verilog is allegedly analogous to a blue print because it assists a chip designer in laying out the design of a particular chip. (Id.) Thus, one looking at the Verilog code is able to ascertain the structures that are represented by the code. (Id. at 36.) According to MPT, the Verilog HDL that is used to program the accused decoders identifies the structure in those decoders. (Doc. No. 597 at 11-16.)

"Once the relevant structure in the accused device has been identified, a party may prove it is equivalent to the disclosed structure by showing that the two perform the identical function in substantially the same way, with substantially the same result." Applied Medical Resources Corp. v. United States Surgical Corp., 448 F.3d 1324, 1333 (Fed. Cir. 2006). Here, MPT has provided sufficient evidence indicating the relevant structure in the accused device. (Doc. No. 597, Ex. C to the Richardson Declaration at C-1 to C-2.) For instance, Dr. Richardson indicates that the VBR100 Blu-ray player utilizes a BCM7440 video decoding processor, which includes a Revision E Advanced Video Decoder (AVD) core module. (Id.) Mr. Richardson specifies that the dedicated hardware components of the core module are described in Verilog HDL. (Id.) The structural description is followed up with details describing how the Verilog modules allegedly perform the claimed functions. (Id. at C-2 to C-8.) The Court concludes that the evidence presented by MPT raises an issue of material fact regarding whether MPT has sufficiently identified structures that are equivalent to the claimed structures.

**2. Availability of Accused Structures at Issuance**

The parties dispute whether the structural equivalents were available at the time the '878 patent was issued. The Federal Circuit has stated that "[a]n equivalent structure or act under § 112 cannot embrace technology developed after the issuance of the patent because the literal

////

////

1 meaning of a claim is fixed upon its issuance." Al-Site Corp. v. VSI Int'l, Inc., 174 F.3d 1308, 1320 (Fed. Cir. 1999). An "'after arising equivalent' infringes, if at all, under the doctrine of equivalents." Id.

According to Dr. Richardson, integrated circuits were being used to implement video decoders capable of motion estimation prior to the issuance of the '878 patent. (Doc. No. 597, Ex. A to the Richardson Declaration at 37.) Verilog was first designed in late 1983 through early 1984, and was used to design decoder integrated circuits prior to the issuance of the '878 patent. (Id. at 35-37.) MPT has not provided any evidence indicating that decoders designed using Verilog HDL capable of "selectively and adaptively performing motion compensated decoding" of frames and fields of a compressed digital video signal were available at the time the '878 patent issued. However, it is only the equivalent structure that must be available at the time of issuance. Here, the structure that MPT alleges is equivalent to that of the claimed structure is a decoder with integrated circuits designed using Verilog HDL. MPT has provided evidence indicating that video decoders designed using Verilog HDL were available prior to issuance. The technology embraced by the alleged structural equivalents (i.e., decoder integrated circuits and Verilog HDL) was developed by the time the '878 patent issued. As a result, the allegedly equivalent structure does not embrace technology developed after issuance of the '878 patent.

Viewing all evidence in a light most favorable to the non-moving party, the Court concludes that a factual dispute remains regarding whether Vizio's accused products directly infringe claim 13 of the '878 patent.

**B. Infringement Under the Doctrine of Equivalents**

An accused device "that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 17 (1997). The accused device may infringe a means-plus-function claim under the doctrine of equivalents if each

////

element performs substantially the same function, in substantially the same way, to achieve substantially the same result. Id. at 40.

"[T]he use of the doctrine of equivalents to establish infringement is limited by the doctrine of prosecution history estoppel." Voda v. Cordis Corp., 536 F. 3d 1311, 1324-25 (Fed. Cir. 2008). Prosecution history estoppel operates by "barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution." Id. Estoppel may arise by amendments made for a "substantial reason related to patentability." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 735 (2002). A patentee may present evidence that the equivalent was unforeseeable at the time of the application in order to rebut a finding that it surrendered particular equivalents. Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1366-67 (Fed. Cir. 2003). Whether a prosecution history estoppel arises from a claim amendment, and if so, the extent of the estoppel, is a question of law to be determined exclusively by the Court. Warner-Jenkinson Co., Inc., 520 U.S. at 39 n.8.

The Supreme Court rejected the "complete bar" approach to prosecution history estoppel, concluding that a substantial claim amendment does not necessarily limit the amended element to its strict literal terms. Festo Corp., 535 U.S. at 738-39. A "patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." Id. at 740.

Here, MPT amended claim 13 to include, "a means responsive to a motion compensation [coding] type signal for selectively and adaptively performing motion compensated decoding of frames of the compressed digital video bit stream and fields of the compressed bit stream." (Doc. No. 597, Ex. G to the Chen Declaration at 502; underlining indicates added portions and brackets indicate deleted portions.) The prosecution history indicates that the amendment included adaptively performing motion compensated decoding in response to a motion compensation type signal in order to distinguish the claim from a prior art reference that taught simultaneous field decoding and frame decoding. (Id.) MPT specifically argued to the USPTO that "[t]he decoder referred to in the Krause patent does not

involve any adaptive motion compensated decoding of an input bit stream, and does not need such decoding capability, because there is no adapted motion compensated coding of video in the encoder." (Id. at 509.) The Supreme Court has noted that "[b]y the amendment [the patentee] recognized and emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced in that difference." Festo Corp, 535 U.S. at 734, 740 (citing Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 136-37). At most, MPT has surrendered language broad enough to cover equivalents that do not perform adaptive motion compensated decoding. Therefore, a triable issue remains as to whether the territory between the original claim and the amended claim, and thus that which is surrendered, includes the structures and functions of Vizio's accused devices. As a result, the Court concludes that a triable issue remains regarding whether Vizio's products infringe the '878 patent under the doctrine of equivalents.

Accordingly, viewing the evidence in a light most favorable to MPT and drawing all reasonable inferences in its favor, the Court denies Vizio's motion for summary judgment motion of non-infringement of the '878 patent.

### **Conclusion**

For the foregoing reasons, the Court denies Defendants' motion for summary judgment on Defendants' patent non-infringement of U.S. Patent No. 5,227,878.

IT IS SO ORDERED.

Dated: November 10, 2011

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT